IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
_____Albany_____ DIVISION

## QUESTIONNAIRE FOR PRISONERS PROCEEDING PRO SE UNDER 42 U.S.C. §1983

Ammon Ra Sumrall 719855

(GIVE FULL NAME AND PRISON NUMBER OF EACH PLAINTIFF)

Plaintiff(s)

VS.

CERT MEMBERS -
Officers Harris, Hart, Taylor
And White; Lt Robert Koontz
And Officer James King
(NAME OF EACH DEFENDANT)

Defendant(s)

Filed at 10:20 A.M
9/27, 2010
WKS
DEPUTY CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

FILED 2010 JUL 28 AM 10:14
EVONNE S. MULL
DOUGHERTY COUNTY
CLERK OF COURTS

CIVIL ACTION NO.
1:10-CV-128(WLS)

## I. GENERAL INFORMATION

1. Your full name and prison number  Ammon Ra Sumrall  719855
2. Name and location of prison where you are now confined  Autry State Prison, Pelham, GA
3. Sentence you are now serving (how long?)  Life.
   (a) What were you convicted of?  Felony murder, three counts of Armed robbery 3 counts of Aggravated Assault
   (b) Name and location of court which imposed sentence  DeKalb Co. Superior Court, Decatur, GA
   (c) When was sentence imposed?  1992
   (d) Did you appeal your sentence and/or conviction?  ☑ Yes  ☐ No
   (e) What was the result of your appeal?  Affirmed
   (f) Approximate date your sentence will be completed  ?

(1)

## II. PREVIOUS LAWSUITS

4. Other than the appeal of your conviction or sentence, have you ever submitted a lawsuit for filing in any federal or state court dealing with the SAME FACTS involved in this lawsuit or otherwise related to your imprisonment?  ☐ Yes  ☒ No

5. If your answer to question 4. is "Yes," list that lawsuit below, giving the following information: (IF YOU HAVE FILED MORE THAN ONE LAWSUIT, LIST OTHER LAWSUITS ON A SEPARATE SHEET OF PAPER, GIVING THE SAME INFORMATION FOR EACH)

   (a) Parties to the previous lawsuit:
   Plaintiff(s): Ammon R. Summall

   Defendant(s): Richard Glecken

   (b) Name of Court: Southern District of GA
   (c) Docket Number: CV699-195   When did you file this lawsuit? 2003
   (d) Name of judge assigned to case: U.S. Magistrate James Graham
   (e) Is this case still pending ☐ Yes ☒ No
   (f) If your answer to (e) is "No," when was it disposed of and what were the results? (DID YOU WIN? WAS THE CASE DISMISSED? DID YOU APPEAL?)
   Lost at jury trial; Appeal denied

## III. PRESENT CONFINEMENT

6. Where are you now confined? Autry State Prison
   (a) How long have you been at this institution? Since October 27, 2009
   (b) Does this institution have a grievance procedure? ☒ Yes ☐ No
   (c) If your answer to question 6(b) is "Yes," answer the following:
      (1) Did you present your complaint(s) herein to the institution as a grievance?
         ☒ Yes  ☐ No
      (2) What was the result? No Action taken

   (d) What, if anything, have you done to bring your complaint(s) to the attention of prison officials? Give dates and places and the names of persons talked to.
   Filed grievances

(2)

7. In what other institutions have you been confined? Give dates of entry and exit.

Georgia State Prison from 1-93 to 10-06; Hays State Prison from 10-06 to 1-07; Johnson State Prison 1-07 to 3-07; Telfair SP from 3-07 to 6-07; Macon State Prison 6-07 to 10-09; Autry SP 10-09 to present

## IV. PARTIES TO THIS LAWSUIT

8. List the name and address of <u>each</u> plaintiff in this lawsuit.

Ammon Ra Sumrall    PO Box 648  Pelham, GA 31779

9. List the full name, the official position, and the place of employment of each defendant in this lawsuit. (ATTACH ADDITIONAL PAGES IF NECESSARY)

Officer Harris, CERT Member, Autry State Prison
Officer Hart, CERT Member, Autry State Prison
Officer Taylor, CERT Member, Autry State Prison
Officer White, CERT Member, Autry State Prison
Lt. Robert Koontz And Officer James King, Autry State Prison

## V. STATEMENT OF CLAIM

10. In the space hereafter provided, and on separate sheets of paper, if necessary, set forth your claims and contentions against the defendant(s) you have named herein. Tell the court <u>WHAT</u> you contend happened to you, <u>WHEN</u> the incident(s) you complain about occurred, <u>WHERE</u> the incident(s) took place, <u>HOW</u> your constitutional rights were violated, and <u>WHO</u> violated them? Describe how <u>each</u> defendant was involved, including the names of other persons who were also involved. If you have more than one claim, number and set forth each claim SEPARATELY.

Do not give any legal argument or cite any cases or statutes at this time; if such is needed at a later time, the court will advise you of this and will afford you sufficient time to make such arguments. KEEP IN MIND THAT RULE 8 OF THE *FEDERAL RULES OF CIVIL PROCEDURE* <u>REQUIRES</u> THAT PLEADINGS BE <u>SIMPLE</u>, <u>CONCISE</u>, AND <u>DIRECT</u>! If the court needs additional information from you, you will be notified.

(3)

# STATEMENT OF CLAIM (CONTINUED)

Where did the incident you are complaining about occur? That is, at what institution or institutions? _(See Attached)_

When do you allege this incident took place? _(See Attached)_

What happened? _(See Attached)_

(4)

11. List the name and address of every person you believe was a witness to the incident(s) you complain about, BRIEFLY stating what you believe each person knows from having seen or heard what happened. (USE ADDITIONAL SHEETS, IF NECESSARY)

_____
_____
_____
_____
_____

12. BRIEFLY state exactly what you want the court to do for you. That is, what kind of relief are you seeking in this lawsuit? Do not make any legal arguments and do not cite any cases or statutes! (USE ADDITIONAL SHEETS, IF NECESSARY)

(1) Grant Plaintiff a jury trial
(2) Award Plaintiff money damages
(3) Grant Plaintiff any other relief the court deems necessary.

13. You may attach additional pages if you wish to make any legal argument. However, legal arguments are NOT required in order for you to obtain relief under §1983. If the court desires legal argument from you, it will request it. If any defendant presents a legal argument, you will be afforded an opportunity to respond thereto.

14. KEEP IN MIND THAT ONCE YOUR LAWSUIT IS FILED, THE COURT WILL REQUIRE YOU TO DILIGENTLY PROSECUTE IT. That means that you will be required to go forward with your case without delay. Thus, if you fail to adequately prepare your case before you file it, you may find your lawsuit dismissed for failure to prosecute if you take no action once it is filed. YOU WILL RECEIVE NO FURTHER INSTRUCTIONS FROM THE COURT TELLING YOU WHAT TO DO OR HOW TO DO IT! IT IS YOUR RESPONSIBILITY AND YOURS ALONE TO PROSECUTE YOUR OWN CASE! If you fail to prosecute your case, it will be dismissed under Rule 41 of the *Federal Rules of Civil Procedure*.

Signed this 26th day of July, 2010.

_____
PLAINTIFF

(5)

## II. PREVIOUS LAWSUITS CONTINUED

2.
  (A) Ammon Ra Sumrall, Plaintiff
      ~~Hilton~~ Hall, Defendant
  (b) Southern District of GA.
  (c) CV601-020  2003
  (d) Judge Edenfield
  (e) No
  (f) Lost at trial, appeal denied

3.
  (A) Ammon Ra Sumrall, Plaintiff
      Stan Shepard, Defendant
  (b) Southern District of GA.
  (c) CV307-064  2007
  (d) Judge Dudley Bowen
  (e) No
  (f) lost at trial; didn't appeal

4. Ammon Ra Sumrall, Plaintiff
   Jamie Hall, Defendant
  (b) Northern District of GA.
  (c) 1:08-CV-3909  2009
  (d) Judge Beverly Martin
  (e) No
  (f) Dismissed

## V. STATEMENT OF CLAIM CONTINUED

1. On October 27, 2009, Plaintiff was transferred from Macon State Prison to Autry State Prison (ASP).

2. Upon arrival to ASP, several officers led Plaintiff and perhaps 30 other prisoners off the bus and into a large room where the officers removed handcuffs and shackles from every prisoner.

3. After the restraints were removed, five members of ASP's Correctional Emergency Response Team (CERT) had the prisoners form three or four lines. Plaintiff stood at the end of one of those lines.

4. The CERT then told all the prisoners to stand at attention while one of its members (Officer Alexander) told the prisoners ASP's rules. One of the rules, Alexander said, was prisoners had to say "Sir yes sir," in a loud tone, whenever any staff member addressed them.

5. At that point, Ofc. Alexander asked the prisoners if they understood what he had said. Some prisoners yelled "Sir yes sir" while others only said "Yes sir." Ofc. Alexander was displeased with the collective response, so he ordered the group to do it again. Plaintiff complied.

6. While Plaintiff remained at attention, Defendant Harris walked up to Plaintiff's left side and asked," You can't

do better than that?" or "You cant yell louder than that?" Plaintiff responded, "I'm going with the flow." Defendant Harris replied, "Going with the flow?! Alright, we 'bout to go with the flow." He then walked off.

7. Seconds later, Defendant Hart walked up behind Plaintiff's right side and asked, "Whats your problem? You aint gon say it?" Plaintiff responded, "That's not what he asked me; thats not what was said." Defendant Hart said, "Come on," and pointed to a room for Plaintiff to walk to.

8. When Plaintiff entered the room, a voice behind him told him to keep walking, so he did. However, as Plaintiff walked, someone slapped him in the back of the head. When Plaintiff turned around, Defendant Hart was in front of him, so Plaintiff asked "Why you hit me?" At that point, Defendant Harris hit Plaintiff on the chin and knocked Plaintiff to the ground. The two then converged on Plaintiff but he managed to get up and run out of the room.

9. Once Plaintiff made it outside the room, Defendants Taylor and White took him to the ground.[1] All four Defendants then dragged Plaintiff back inside the small room and beat, punched and kicked Plaintiff mainly in the back of

---

[1] Defendants Taylor and White apparently guarded the door when Defendants Hart and Harris took Plaintiff in the room.

his head, back and lower body. Before Plaintiff blacked out, one of the Defendants stomped his left knee and yelled, "Don't run from us! Don't ever run from us!"

10. When Plaintiff became conscious, he found himself still in the small room, on his back, and Defendant Taylor standing above him. Taylor told Plaintiff to get up but Plaintiff said he couldn't because his back was messed up. Taylor then threatened to beat Plaintiff again if he didn't say yes sir, and stand up. Plaintiff said yes sir, then struggled through enormous pain to stand up.

11. Defendant Taylor then made Plaintiff go to the sink (in the room) and clean the blood on his face that came from his nose. Taylor then gave Plaintiff a new shirt and told Plaintiff that he didn't want to hear nothing about what happened. He then asked Plaintiff if he understood. Plaintiff said yes sir. Afterwards, Taylor put Plaintiff in another small room, by himself, while the other prisoners were kept together.

12. Approximately an hour or two after the beating incident (as described above), the CERT (IE, Defendants Harris, Hart, Taylor and White), took Plaintiff to see a nurse as a routine procedure for new arrivals.

13. The nurse who recorded Plaintiff's vital signs asked him, "Are you nervous about something? What are you scared about?" Plaintiff asked her if something was wrong, and she said, "Your pulse is 123."

14. Plaintiff denied that he was nervous or scared of anything, and he didn't tell the nurse he had been beaten and was in serious pain because he feared the CERT (IE, Defendants Harris, Hart, Taylor and White) would beat him again if they heard him tell the nurse what they did to him.

15. After the nurse completed her routine, Plaintiff was moved to general population.

16. At approximately 9:30 PM, of the day of the beating incident, Plaintiff told the second shift officers who worked the building he was in that he needed to go to medical because he was in pain from having been beaten by the CERT that afternoon. The officers said that they would tell their supervisor about Plaintiff's request, but nothing happened.

17. At approximately 11 PM of the day of the beating incident, Plaintiff asked the third shift officer (who worked the dorm) the status of his request to be seen by medical. The officer said he didn't know anything about Plaintiff's request, but he'd tell his supervisor. However, Plaintiff was not seen by medical staff that night.

18. As a result of Plaintiff being denied medical treatment the night of the beating, fellow prisoners put ice packs on Plaintiff's back and the back of his head. The ice greatly reduced the swelling in the back of Plaintiff's head, and also helped with the pain in his back.

19. Nevertheless, on October 28, 2009, at approximately 5:30 A.M., Plaintiff told the officer working in the control booth that he was in pain and needed medical attention. Several minutes later, Plaintiff was sent to the prison's Medical department.

20. At Medical, Plaintiff was seen by a male nurse named O'Neal. As Mr. O'Neal attended to Plaintiff's external injuries, he opined that Plaintiff should be seen by the prison's doctor, and that X-rays should be taken. Consequently, X-rays were taken later that morning and Plaintiff subsequently saw Dr. Aikens.

21. Among other things, Dr. Aikens said he believed the X-rays showed Plaintiff's ribs had been broken from the beating but he wasn't absolutely sure. Nonetheless, he prescribed pain medication for Plaintiff to take in relation to his back, rib and external injuries.

22. On October 28, 2009, at approximately 1 PM, Plaintiff encountered Defendant Taylor while enroute to the messhall for lunch. Defendant Taylor reminded Plaintiff that if he told anyone

28. Defendant King read said statement, then got on the phone. He subsequently told Plaintiff that the shift supervisor would come talk to Plaintiff.

29. On November 23, 2009, at approximately 12:40 AM, Defendant King woke Plaintiff and told him "they're ready for you." He then instructed Plaintiff to take his property to the door, where another officer waited and eventually led Plaintiff to the office of Defendant Lt. Robert Koontz.

30. Upon entering the office, Defendant Koontz told Plaintiff to tell him "the rest of the story." Plaintiff asked, what story?, which resulted in Defendant Koontz holding up the statement Plaintiff had gave Defendant King. Plaintiff then told Defendant Koontz about the CERT (IE., Defendants Harris, Hart, Taylor and White) beating him on October 27, 2009.

31. After Plaintiff finished speaking, Defendant Koontz told Plaintiff that he wasn't going to give Plaintiff protective custody from the CERT. He went on to say that he had once been a CERT member with the other Defendants and knew them to be good guys who wouldn't beat prisoners for nothing. Defendant Koontz then asked Plaintiff if he had told anyone else about the beating incident. Plaintiff said he had filed two grievances on the CERT.

32. Upon hearing Plaintiff say he had filed grievances, Defendant Koontz's whole attitude changed. In a deep and clearly angry tone, he said, "Grievance?! What, you tryin to get them in trouble or something?!" He then concluded by saying, "Naw, I'm not gon give you PC; I'm gon throw you in the hole and put a DR on your ass!" Defendant Koontz then had a subordinate take Plaintiff to Administrative Segregation.

33. On November 23, 2009, at approximately 2:45 A.M, Plaintiff received a DR authored by Defendant James King. Said DR charged Plaintiff with Failure to Follow Instructions. The factual statement alleged: On the above date and time I officer James King was conducting lockdown when inmate Sumrall Ammon 719855 said he wasn't locking down. OIC was notified." The DR further shows Defendant Koontz authorized Plaintiff's placement in lockdown.

34. Plaintiff submits that he did NOT fail to follow any instructions given by anyone. Plaintiff further submits that the DR Defendant King wrote is completely false, and that it was based solely on Defendant Koontz's desire to retaliate against Plaintiff for having filed grievances against ASP's CERT.

35. Finally, Plaintiff submits that he did NOTHING to warrant

the unnecessary, unprovoked and unjustified beating[2] he received on October 27, 2009 by Defendants Harris, Hart, Taylor and White.

---

2. Besides being knocked unconscious and having received a bloody nose, possible rib fracture and various scrapes and bruises, medical records also show Plaintiff's back was severely injured, which made it difficult for him to stand and walk for several weeks.